UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JEFFREY GOFF, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-141-ART |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff

Jeffrey Goff, R. 10, and Defendant Michael Astrue, R. 11, Commissioner of Social Security.  For

the reasons given below, the Court will deny both motions and remand this case back to the ALJ for

specific findings as discussed in this opinion and order.

I.    BACKGROUND

Goff filed an application for disability and disability insurance on January 13, 2006, and he

subsequently filed an application for supplemental security income on January 31, 2006.  Adm. R.

at 11.  In both applications, Goff alleged a disability beginning May 19, 2005.  *Id.*  The claims were

denied initially on May 11, 2006, and again on reconsideration on December 21, 2006.  *Id.*  Goff

then filed a timely written request for a hearing before an Administrative Law Judge (ALJ).  *Id.*  ALJ

Andrew J. Chwalibog presided over a hearing in Prestonsburg, Kentucky, on September 12, 2007.

*See id.* at 202.  At the conclusion of that hearing and without explanation, the ALJ ordered Goff to

undergo a physical consultative examination.  *Id.* at 218.  The ALJ then held another hearing on

January 9, 2008, after the results of the consultative examination were available. *See id.* at 196, 198. Thereafter, the ALJ issued a decision on March 3, 2008, denying benefits to Goff. *See id.* at 11–19. The ALJ concluded that from May 19, 2005, through the date of the decision, Goff was not disabled and thus was not eligible for disability and disability insurance benefits or supplemental security income. *Id.* at 18–19. The Appeals Council denied Goff's request for review of the ALJ's decision, *id.* at 4, at which point the ALJ's decision became the final decision of the Commissioner of Social Security. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

## II.   SOCIAL SECURITY REVIEW PROCESS AND THE ALJ'S DECISION

A claimant can receive benefits only if he is deemed "disabled" under the Social Security Act.[1] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A)(1988)). "A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(2)(A)). To identify claimants who fit within this definition of disability, the Social Security Administration (SSA) uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *see also Combs*, 459 F.3d at 642. The claimant bears the burden through the first four steps, but the burden shifts to the SSA on the fifth step. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

In step one, the SSA considers claimants' "work activity." 20 C.F.R. § 404.1520(a)(4)(i);

---

[1] Because Goff has filed applications for both disability and disability insurance benefits and supplemental security income, the statutes and regulations for both types of claims apply. The relevant statutes and regulations, however, are identical. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); R. 10, Mem. in Supp. at 5 n.1.

20 C.F.R. § 416.920(a)(4)(i). If the claimant is "doing substantial gainful activity," the SSA

determines the claimant is not disabled. *Combs*, 459 F.3d at 642 (citing 20 C.F.R. § 1520(a)(4)(I));

20 C.F.R. § 416.920(a)(4)(i). If claimants get past the first step, then:

> the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months." [20 C.F.R.] § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.*; § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

*Combs*, 459 F.3d at 642-43.

In this case, the ALJ performed the requisite five-step process to evaluate Goff's claims.

First, the ALJ found that Goff had not engaged in substantial gainful activity since May 19, 2005,

the date Goff alleges the disability began. *See* Adm. R. at 13. At step two, the ALJ determined that Goff had the severe impairments of lumbar spine pathology and cervical spine pathology. *Id.* at 13. At step three, the ALJ concluded that neither of these impairments, either alone or in combination, met or medically equaled an impairment on the SSA's list of impairments. *Id.* at 15. At step four, the ALJ evaluated Goff's residual functional capacity and found that he could perform sedentary work, *i.e.*, lifting 15 pounds occasionally and 10 pounds frequently. *Id.* Based on a report of the consulting physician rather than Goff's treating physician, the ALJ found Goff could stand and/or walk a total of 1–2 hours out of 8 hours and 10–15 minutes without interruption and had no sitting limitations. *Id.* Because the ALJ determined that Goff's residual functional capacity did not allow him to perform his past relevant work, *id.* at 17, the ALJ proceeded to the fifth step. In the final step, the ALJ—"considering the claimant's age, education, work experience, and residual functional capacity"—concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 18. Therefore, the ALJ determined that Goff was not disabled. *Id.*

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision is restricted "to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Cutlip*, 25 F.3d at 286). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision

even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). Further, when reviewing the Commissioner's decision, the Court cannot "try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).

## IV.   ANALYSIS

Goff raises a single challenge in support of his claim that the ALJ's decision should be reversed—that the ALJ should have recontacted Dr. Abad, Goff's treating physician, to determine whether additional information was available. R. 10, Mem. in Supp. at 2. As part of the fourth step in the disability-evaluation process—in which the ALJ evaluated Goff's residual functional capacity—the ALJ reviewed a report completed by Dr. Abad that assessed Goff's ability to do work-related activities. *See* Adm. R. at 17. The ALJ, however, rejected the limitations recommended by Dr. Abad, stating:

> As for the opinion evidence, I rejected the medical source statement of Dr. Abad at Exhibit 16F. I acknowledge that he is a treating source, but his limitations are not supported by his treatment notes or findings. There is no real basis for his sitting limitations or the claimant's need to lie down.

*Id.* In contrast, Dr. Barefoot, the consulting physician who examined Goff, found less severe restrictions on Goff's ability to do work-related activities than did Dr. Abad. *See id.* at 191–93. The ALJ found Dr. Barefoot's report "more persuasive, and consistent with the totality of the evidence," *see id.* at 17, and thus relied on it in determining Goff's residual functional capacity. Goff argues that the duty to recontact under §§ 404.1512(e) and 416.912(e) was triggered because the ALJ

5

viewed Dr. Abad's report as inadequate.

20 C.F.R. §§ 404.1512(e) and 416.912(e) provide, in relevant part:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

Though not explained clearly, Goff essentially offers two bases for a duty to recontact. One is that the ALJ's rationale in rejecting Dr. Abad's report and treatment notes reveals that the ALJ viewed it as inadequate. R. 10, Mem. in Supp. at 2–3. Second, according to Goff, the fact that the ALJ ordered a post-hearing consultative examination demonstrates that he viewed the evidence from Dr. Abad as inadequate. *Id.* at 2. Both arguments lack merit.

The plain language of §§ 404.1512(e) and 416.912(e) make clear that the duty to recontact is triggered only when the evidence received from the treating physician or other medical source is inadequate for the ALJ to determine if the claimant is disabled. Here, however, the ALJ plainly did not find Dr. Abad's information "inadequate." Instead, the ALJ simply found it to be unpersuasive. Indeed, after reviewing Dr. Abad's notes, the ALJ found that Dr. Abad's conclusions were not

6

supported by his own notes, and thus, found Dr. Barefoot's report to be more persuasive. *See* Adm.

R. at 17.[2]  The ALJ's rejection of Dr. Abad's recommendations for this reason does not trigger a duty

to recontact. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006) ("A

disagreement between two medical professionals does not render the opinion of one 'inadequate'

under the regulations.").[3]

　　　Goff next argues that the mere fact that the ALJ ordered a post-hearing consultative exam

triggered a duty to first recontact his treating physician, Dr. Abad.  The Court ordered additional

briefing on this issue, *see* R. 12, and after considering these briefs and reviewing the applicable

regulations, the Court concludes that the ALJ's request for Goff to undergo a consultative

examination did not mandate a duty to recontact Dr. Abad.

　　　There is no controlling precedent on this issue, and the existing persuasive authority yields

mixed results. *Compare Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1374 n.55 (N.D. Ga. 2006)

("When a consultative examination is needed, the ALJ had a duty to re-contact the claimant's

treating physician first." (citing 20 C.F.R. § 404.1512(f); *Norman v. Apfel*, 100 F. Supp. 2d 1352,

1353 (N.D. Ga. 2000))), *with Frost v. Barnhart*, No. 03-21-P-H, 2004 WL 1529286, at *12 (D. Me.

May 7, 2004) ("[E]ven when a duty to seek clarification arises, sections 404.1512(e)-(f) and

───────────────────

　　　[2] Goff's claim that the ALJ "did not state that he prepared his limitations (residual functional capacity) based on Dr. Abad's treatment notes," R. 10, Mem. in Supp. at 3, while technically correct, misses the point.  The ALJ did not use Dr. Abad's report and his treatment notes in determining Goff's residual functional capacity because, after reviewing them, he rejected them in favor of Dr. Barefoot's report. Adm. R. at 17.  Thus, the fact that the ALJ did not use Dr. Abad's treatment notes in determining the residual functional capacity only reflects the ALJ's decision to credit Dr. Barefoot's report over Dr. Abad's report and treatment notes, a credibility determination to which this Court defers.

　　　[3]Unpublished decisions of the Sixth Circuit are not binding under the doctrine of stare decisis. *United States v. Sanford* , 476 F.3d 391, 396 (6th Cir. 2007).  Accordingly, the Court considers such decisions for their persuasive value only. *See id.*

404.1527(c)(3) contemplate that it may be satisfied not only (preferably) by recontacting the treating physician but also (alternatively) by obtaining a consultative examination at the commissioner's expense." (citing 20 C.F.R §§ 404.1512(e)-(f), 404.1527(c)(3); *Knox v. Barnhart*, 60 F. App'x 374, 377 (3d Cir. 2003))).   After reviewing the pertinent regulations, this Court concludes the ALJ's decision to order a consultative examination in this instance did not trigger a duty under §§ 404.1512(e) and 416.912(e) to first recontact the treating physician.

Section 404.1527 provides that if the ALJ does not have sufficient evidence to determine whether the claimant is disabled, there are a number of options (any or all of which the ALJ may choose) for obtaining additional evidence.   Specifically, the ALJ may "request additional existing records, recontact [the] treating sources or any other examining sources, ask [the claimant] to undergo a consultative examination at [the commissioner's] expense, or ask [the claimant] or others for more information." 20 C.F.R. § 404.1527(c)(3) (emphasis added).   If, as here, the ALJ chooses the option of ordering a consultative examination, the ALJ must then look to § 404.1512(f), which defines more narrowly what to do when ordering a consultative exam.   Sections 404.1512(f) and 416.912(f) provide that an ALJ may order a consultative examination "[i]f the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source . . . .   However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence."

Contrary to Goff's assertion, nothing in sections § 404.1512(f) or § 416.912(f) mandates an unequivocal duty to recontact a treating source if the ALJ chooses to order a consultative

8

examination.  Rather, the plain language gives instructions to the ALJ in utilizing this section to gather additional evidence.  The sections mandate that the ALJ make one of three findings as a pre-requisite to ordering a consultative exam: (1) that the information is not readily available from medical treatment source, (2) that the ALJ is unable to seek clarification from medical treatment source, or (3) that the source is unable to provide certain information or is uncooperative (in that case an exam may be ordered while awaiting receipt of medical source evidence).  *Id.* §§ 404.1512(f), 416.912(f).

While §§ 404.1512(f) and 416.912(f) may indicate that the ALJ *can* recontact the claimant's medical sources when the ALJ orders a consultative examination, the Court declines to adopt Plaintiff's novel argument that § 404.1512(e) *requires* the ALJ to recontact the claimant's medical sources when a consultative examination is ordered.  Nothing in the regulations specifically links § 404.1512(e) and § 404.1512(f).  Rather, these sections simply explain the ALJ's available options for obtaining additional evidence if the ALJ does not have sufficient evidence to determine whether a claimant is disabled.  Thus, there was no error in failing to recontact the claimant's medical source.

Finally, however, the ALJ has a duty to develop an adequate record to support his conclusions.  *See Hall v. Comm'r of Soc. Sec.*, No. 98-6102, 1999 WL 685949, at *3 (6th Cir. Aug. 24, 1999).  Nevertheless, the record before this Court does not indicate the reasoning for the ALJ's decision to order a consultative examination.  Thus, the Court is unable to determine whether the ALJ complied with § 404.1512(f) in ordering the consultative examination.  Accordingly, this matter will be remanded to the ALJ so that he can explain on the record why he ordered the consultative exam.  On remand, the ALJ should explain on the record which, if any, of the three predicate situations under §§ 404.1512(f) and 416.912(f) called for a consultative examination; i.e., (1) that

the information was not readily available from medical treatment source, (2) that the ALJ was unable to seek clarification from medical treatment source, or (3) that the source was unable to provide certain information or was uncooperative.

## V.  CONCLUSION

For the reasons given above, it is **ORDERED** as follows:

(1)      Plaintiff's Motions for Summary Judgment, R. 10 & R. 13, are **DENIED.**

(2)      Defendant's Motions for Summary Judgment, R. 11 & R. 14, are **DENIED**.

(3)      Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** to

the Commissioner for further administrative proceedings consistent with this

Memorandum Opinion and Order.

This the 5th day of February, 2009.

**Signed By:**

**_Amul R. Thapar_**

**United States District Judge**

10